IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| INVICTUS SPECIAL SITUATIONS MASTER I, L.P., *a Cayman Islands exempted limited partnership by and through TREO Vitus GP, LLC*, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:24-CV-246-DII |
| SCHULTE ROTH & ZABEL LLP and DOUGLAS MINTZ, | § § § | |
| Defendants. | § § | |

**ORDER**

Defendants Schulte Roth & Zabel ("SRZ") and Douglas Mintz ("Mintz") (collectively,

"Defendants") removed this case on March 5, 2024. (Dkt. 1). Before the Court is Plaintiff Invictus

Special Situations Master I, LP's ("the Fund"), by through its general partner, TREO Vitus GP, LLC

("TREO") motion to remand. (Dkt. 11). Defendants filed a response, (Dkt. 16), and the Fund filed a

reply, (Dkt. 19). Having considered the briefing, the applicable law, and the record, the Court grants

the Fund's motion to remand but denies the Fund's request for costs and expenses under 28 U.S.C.

§ 1447(c).

**I. BACKGROUND**

This case stems from a dispute between a law firm and the firm's partner—Defendants—

and its former client—the Fund—over attorneys' fees that the Fund allegedly owes Defendants. On

March 2, 2023, the Fund's former investment manager, Invictus Global Management, LLC ("IGM")

entered into an engagement agreement with Mintz, on behalf of SRZ, for Mintz and the firm to

represent and advise the Fund in connection with the bankruptcy of Tuesday Morning Corporation.

(Resp., Dkt. 16, at 4). The Engagement Agreement listed SRZ's billing procedures and rates in

connection with the representation. (*See* Engagement Agreement, Dkt. 16-1, at 2–3). The

Engagement Agreement also included an arbitration clause, which states that all claims or disputes arising out of SRZ's work for the Fund in connection with the Engagement Agreement shall be referred to binding arbitration conducted by JAMS. (*Id.* at 10–11). From March 2023 to August 2023, Defendants devoted thousands of hours to this representation. (Resp., Dkt. 16, at 5–6).

During this timeframe, SRZ sent the Fund eighteen invoices for services rendered under the Engagement Agreement, totaling $6,114,388.46 in attorneys' fees and disbursements. (*Id.* at 6). The Fund sent SRZ $2,002,713.71 in payments, but Defendants allege that the Fund still owes SRZ $4,111,674.75, plus the "success fee" called for in the Engagement Agreement. (*Id.*). According to Defendants, at the time that the Engagement Agreement was executed, IGM had authority to act on behalf of the Fund, so the terms of the Engagement Agreement bound the Fund, and the Fund is now liable for the owed fees. (*Id.* at 4–5).

The Fund disputes that it is bound by the Engagement Agreement. It states that before Defendants were to be paid under the Agreement, the Fund's investors removed IGM for financial mismanagement and other alleged breaches of duty to the Fund and appointed TREO to take control of the Fund as its new manager and general partner. (Mot., Dkt. 11, at 2). TREO, on behalf of the Fund, now argues that the terms of the Engagement Agreement were commercially unreasonable and "appear to be designed to siphon the Fund's money for Defendants' benefit." (*Id.*). The Fund contends that it never executed the Engagement Agreement and that there is ambiguity concerning whether Defendants directly represented the Fund, rather than IGM in a separate capacity as an agent for an investment that merely included the Fund—and to what extent, if any, the fees should be appropriately allocated to the Fund. (*Id.* at 3).

On December 4, 2023, SRZ filed and served upon the Fund a demand for arbitration with JAMS in New York to seek the alleged owed fees. (Resp., Dkt. 16, at 6). Because the Fund disputes that it is bound under the Engagement Agreement, it has disputed the validity of this arbitration

proceeding. On February 27, 2024, the Fund filed this case in the 455th Judicial District Court of Travis County, Texas, seeking a stay of the pending JAMS arbitration proceeding. (*Id.*). On March 5, Defendants removed the case to this Court, asserting diversity jurisdiction. (Not. Removal, Dkt. 1). The Fund's motion to remand followed on March 18, 2024. (Dkt. 11). More recently, on May 21, 2024, Defendants filed a motion to compel this case to arbitration and to stay this case, (Dkt. 22), which the Fund opposes, (*see* Dkt. 23). Both parties also filed motions for hearings on the motion to remand and the motion to compel arbitration. (Dkts. 30, 32).

## II. LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds $75,000. *Id.* § 1332(a)(1). This requires "complete diversity" of citizenship: "A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). The removal statute is "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). A federal district court must remand a case to state court if it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). But where jurisdiction exists, the court has a "virtually unflagging obligation" to exercise it. *Colo. River Water Conservation Dist. v. United States¸* 424 U.S. 800, 817 (1976).

## III. DISCUSSION

The Fund alleges that remand is warranted in this case because there is not diversity jurisdiction over the parties. The Fund offers two theories of why the parties are not diverse: (1)

SRZ is stateless for the purposes of diversity jurisdiction because one of its partners is a US citizen domiciled abroad; and (2) both parties have New York-based partners. (*See* Mot., Dkt. 11, at 4, 6). The Fund also requests that the Court require Defendants to pay the Fund costs and expenses under 28 U.S.C. § 1447(c) because removal was objectively unreasonable, and Defendants' notice of removal contained insufficient and threadbare allegations of the parties' citizenship. (*Id.* at 7–8). In opposition, Defendants argue that there is diversity jurisdiction because (1) SRZ is not a stateless citizen; and (2) there is insufficient evidence to conclude that the Fund has a New York-based partner. (Resp., Dkt. 16, at 12–16). Defendants also oppose the Fund's request for fees, contending that their notice of removal was proper, adequately alleged diversity, and contained a reasonable basis for removal. (*Id.* at 7–9, 16–17). The Court first addresses the Fund's two theories regarding diversity of the parties. Because the Court finds that remand is warranted, it then turns to the Fund's request for attorneys' fees and costs.

### A. SRZ is not a stateless citizen for purposes of diversity jurisdiction.

Because partnerships exist on both sides of this litigation, particular rules apply for determining citizenship for diversity purposes. "[T]he citizenship of a limited partnership is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). Likewise, "the citizenship of a LLC is determined by the citizenship of all of its members." *Harvey*, 542 F.3d at 1080. However, "a partnership whose members include U.S. citizens domiciled abroad, is stateless for the purposes of diversity jurisdiction." *Firefighters' Retirement Sys. v. Citco Grp.*, 796 F.3d 520, 523 n.1 (5th Cir. 2015). "Accordingly, it has been held consistently that a diversity suit may not be maintained under 28 U.S.C. § 1332(a)(1) by or against a United States citizen who is domiciled in a foreign country, for a resident of a foreign country is not necessarily a citizen thereof." *Coury v. Prot*, 85 F.3d 244, 249–50 (5th Cir. 1996).

The Fund contends that SRZ is stateless because it has at least two American partners who are domiciled in London, Anna Maleva-Otto and Josh Dambacher. (Mot., Dkt. 11, at 6). Attached to its response, Defendants provide a declaration from Ms. Maleva-Otto that states that she is and always has been a UK citizen. (*See* Maleva-Otto Decl., Dkt. 16–3, ¶ 2). In its reply, the Fund concedes that Ms. Maleva-Otto is a UK citizen. (Reply, Dkt. 19, at 5). As for Mr. Dambacher, however, the parties dispute his domicile.

"For a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. § 1332," and diversity jurisdiction may be invoked "when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties." *Coury*, 85 F.3d at 250. "A person's domicile persists until a new one is acquired or it is clearly abandoned" and there "is a presumption in favor of the continuing domicile." *Id.* A change in domicile thus requires the concurrence of both "(1) physical presence at the new location and (2) an intention to remain there indefinitely." *Id.* In determining an individual's domicile, a court "must address a variety of factors," with no "single factor [being] determinative." *Id.* at 251. These factors include where an individual "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.*

Defendants provide a declaration from Mr. Dambacher, in which he states that he has always been a US citizen and is a citizen of New York. (Dambacher Decl., Dkt. 16-4, ¶ 2). He states that his permanent residence is at an apartment in Manhattan, and he is a resident of New York for tax purposes. (*Id.*). Mr. Dambacher states that he was admitted to practice law in the state of New York in 2002 and has remained up to date on his New York bar registration status through the present. (*Id.* ¶ 3). He is also a member of the New York Bar Association. (*Id.*). He explains that in 2008 he was asked by SRZ to move to London on a "temporary work assignment" to work in the

firm's London office and that he has worked there from 2008 until the present. (*Id.* ¶ 6). Mr. Dambacher states that he also works in the firm's New York office periodically throughout the year. (*Id.*). He says that he obtained a UK citizenship in order to maintain his right to work in the United Kingdom post-Brexit and that now he is a dual citizen. (*Id.* ¶ 7). He also states that he continues to do his banking in New York, while maintaining one bank account in the United Kingdom for the purpose of converting US dollars into British pounds. (*Id.* ¶ 8). Mr. Dambacher continues to pay New York state and US federal taxes. (*Id.* ¶ 9). Conversely, he states that he has never voted in the United Kingdom and has never been a member of the bar in any courts in the United Kingdom. (*Id.* ¶¶ 2, 3). Mr. Dambacher states that he "fully intend[s] to return to the United States once [his] assignment to Schulte's London office is complete, and it is [his] intent to maintain [his] domicile in New York for the indefinite future." (*Id.* ¶ 10).

Defendants, however, ask the Court to find that Mr. Dambacher's statement that he intends to return to the United States is contradicted by the following facts: (1) His work assignment is not "temporary" given that he has worked in London for nearly sixteen years; (2) he provides no details as to how often he works out of the firm's New York office; (3) it appears that Mr. Dambacher may rent out his Manhattan residence; and (4) to obtain his UK citizenship Mr. Dambacher allegedly would have had to have an intent to remain in the UK. (Reply, Dkt. 19, at 5–6). Defendants cite *Coury* for the proposition that "[a] litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." 85 F.3d at 251.

Taking into consideration the various factors that go into a determination of an individual's domicile, the Court finds that Mr. Dambacher is domiciled in New York and is a citizen of New York for diversity purposes. Although Mr. Dambacher has lived and worked in London for sixteen years, he still maintains an intention to return to the United States. This statement of intent is corroborated by the fact that he still owns property in New York, conducts most of his banking in

New York, pays New York and US taxes, is an attorney in good standing in New York and a member of the New York Bar Association. Meanwhile, he has not registered to vote or voted in the UK and is not a member of any courts in that country. Accordingly, Mr. Dambacher's citizenship does not render SRZ stateless in a diversity jurisdiction analysis.

**B. The Fund presents evidence that it has a New York-based partner.**

Next, the Fund alleges that it has at least one New York-based partner. Because SRZ has at least one New York-based partner and therefore is itself a citizen of New York, (*see* Not. Removal, Dkt. 1, at 4), the Fund argues that the presence of a New York-based partner in its membership structure destroys diversity in this case, (Mot., Dkt. 11, at 6). The Fund attempts to establish New York citizenship in two ways: through TREO, its general partner, and through its limited partners.

Attached to its motion to remand, the Fund provides a declaration from an officer of TREO, Joseph Woodmansee. (*See* Woodmansee Decl., Dkt. 11-1). Mr. Woodmansee explains the corporate structure of the Fund as follows. TREO is the general partner of the Fund. TREO is wholly owned by TREO Asset Management, LLC ("TREO AM"). TREO AM, in turn, is wholly owned by TREO Capital Advisors ("TREO Capital"). TREO Capital, in turn, has an individual member, Jeffrey Dunn, who is a citizen of New York. (*Id.* ¶¶ 1–4). Accordingly, the Fund argues that because Dunn and TREO are citizens of New York, the Fund is also a citizen of New York. (Mot., Dkt. 11, at 6–7).

The Fund also contends that it is a New York citizen through one of its limited partners. Mr. Woodmansee explains that the Fund has two limited partners: Invictus Special Situations Offshore I, L.P. (the "Offshore Feeder") and Invictus Special Situations Domestic I, L.P. (the "Onshore Feeder"). (Woodmansee Decl., Dkt. 11-1, ¶ 6). Mr. Woodmansee states that the "Onshore Feeder has at least one individual Limited Partner who is a citizen of the State of New York." (*Id.* ¶ 7). He also states that "[o]n information and belief, entities affiliated with and controlled by Corbin Capital

Partners, L.P. ("Corbin") and Gatewood Capital Partners LLC ("Gatewood") hold Limited Partner interests in the Fund through the Onshore Feeder and are also citizens of New York." (*Id.*). The Fund argues that both statements support a finding that the Fund has New York-based limited partners. (Mot., Dkt. 11, at 6).

Defendants dispute both allegations of New York citizenship. They argue that Mr. Woodmansee's assertion that the Onshore Feeder is a citizen of New York is "wholly conclusory" because Mr. Woodmansee does not provide the name of the Onshore Feeder's individual limited partner who is allegedly a citizen of New York. (Resp., Dkt. 16, at 14). Defendants next argue that Mr. Woodmansee's assertion that "entities affiliated with and controlled by [Corbin] and [Gatewood] hold Limited Partner interests in the Fund through the Onshore Feeder and are also citizens of New York" similarly fails to establish the Fund's New York citizenship because Mr. Woodmansee has failed to identify the individuals or corporations through which Corbin and Gatewood claim New York citizenship. (*Id.* at 15). They also fault Mr. Woodmansee for failing to make this statement based upon personal knowledge. (*Id.*). Last, Defendants argue that Mr. Woodmansee's statement that TREO and the Fund are New York citizens through Jeffrey Dunn is also insufficient because his declaration does not provide any support for how he knows that Dunn is a New York citizen. (*Id.* at 15–16).

The Court finds that Mr. Woodmansee's declaration establishes that the Fund has at least one New York-based partner. The Court agrees with Defendants that the Fund has not convincingly proved its New York citizenship through its limited partner, the Onshore Feeder. Mr. Woodmansee's statements that the Onshore Feeder is a New York citizen through at least one individual limited partner and its connections with Corbin and Gatewood are too vague to establish citizenship because they do not specify the individuals or entities associated with the Onshore Feeder, Corbin, or Gatewood that are New York citizens. However, the Court is persuaded that

TREO—and accordingly the Fund—is a New York citizen because one of its members, Dunn, is a New York citizen. Unlike his statements regarding the Onshore Feeder, Mr. Woodmansee has sufficiently traced the ownership interests of TREO to arrive at an individual who is a New York citizen. It is not necessary for Mr. Woodmansee to provide more details about Dunn's citizenship given that Mr. Woodmansee has affirmed that he is an officer of TREO and has personal knowledge about the facts in his declaration. Defendants have not provided any evidence to rebut Mr. Woodmansee's representation of Dunn's citizenship. And the Court has no reason to doubt Mr. Woodmansee's representation that Dunn is a New York citizen and can consider this statement in its determination of citizenship. *See Coury*, 85 F.3d at 249 ("In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, . . . concerning the facts underlying the citizenship of the parties. The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction.") (citations omitted).

Because both the Fund and SRZ are New York citizens, diversity jurisdiction is not established in this case. Accordingly, the Court will grant the Fund's motion to remand.

### C. An award of attorney's fees is not warranted in this case.

Having established that the Fund's motion to remand is meritorious, the Court concludes by addressing the Fund's request for attorney's fees under 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005); *Am. Airlines, Inc. v. Sabre, Inc.,* 694 F.3d 539, 541–42 (5th Cir. 2012). The decision about whether to award attorney's fees under this provision is at the full discretion of the court. *Howard v. St. Germain,* 599 F.3d 455,

9

457 (5th Cir. 2010); *Redus v. Univ. of the Incarnate Word*, 61 F. Supp. 3d 668, 679 (W.D. Tex. 2014).

The party seeking recovery under the statute has the burden of proving entitlement to attorney's

fees. *See Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir. 1988).

In its notice of removal, Defendants stated that removal was warranted because there was

complete diversity of citizenship. (Not. Removal, Dkt. 1, at 4). Defendants specified the citizenship

of Mintz and SRZ's partners. (*Id.*). But for the Fund, Defendants simply stated that "[u]pon

information and belief, [the Fund] does not have any partner that is a citizen of any state in which

Defendants are citizens." (*Id.* at 5). The Fund argues that as the removing party, Defendants had the

burden of alleging the citizenship of each party, including identification of all partners or members

that appeared in a party's ownership structure. (Mot., Dkt. 11, at 7). The Fund argues that

Defendants' "threadbare allegations" and "vague pleading[s]" did not meet the "unforgiving

standards" for invoking federal court diversity jurisdiction. (*Id.* at 7–8 (quoting *MidCap Media Finance,*

*L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019))).

Accordingly, the Fund contends that fees are warranted in this case because Defendants

knew or reasonably could have determined that its removal lacked an objectively reasonable basis.

(*Id.* at 9). The Fund offers a few theories as to how Defendants should have known that its removal

was objectively unreasonable. First, Defendants knew that they were stateless based on the

composition of their own partnership. (*Id.*). Second, Defendants cannot reasonably deny knowledge

of the Fund's partnership and its New York-based investors given that they used to represent the

Fund and have expertise in the private equity sector. (*Id.* at 9–10). Specifically, the Fund argues that

Defendants should have known that Corbin and Gatewood were New York citizens because

Defendants referenced Corbin in time entries regarding the legal work underlying this dispute. (*Id.* at

9; *see also* Woodmansee Decl., Dkt. 11-1, ¶ 8).

In response, Defendants argue that they had an objectionable basis to believe that their removal was proper given that they argued that they were not stateless and had alleged upon information and belief that diversity jurisdiction existed. (Resp., Dkt. 16, at 17). Defendants argue that its notice of removal adequately alleged diversity because courts have found that is appropriate to make allegations regarding citizenship based on information and belief. (*Id.* at 8 (citing *Henderson Apartments Tenant, LP v. Travelers Excess & Surplus Lines Co.*, 2023 WL 5983889, at *3 (W.D. Tex. Sept. 14, 2023; and citing *BSG Clearing Sols. N. Am., LLC v. Durham Tech., LLC*, 2018 WL 6219812, at *3-4 (W.D. Tex. Nov. 20, 2018))). They argue that relying upon information and belief in regard to the Fund's citizenship was reasonable given that the Fund's citizenship is not discernible from publicly available information and is information that is uniquely within the Fund's knowledge. (*Id.* at 8–9). Defendants allege that they did not have information related to the citizenship of the Fund's investors during their representation of the Fund. (*Id.* at 9). And even though they were aware that Corbin and Gatewood were investors in the Fund, their knowledge that they were New York-based investors was not sufficient for them to ascertain Corbin and Gatewood's citizenship. (*Id.* at 8). Defendants also point out that prior to removal, they had asked the Fund for information regarding its citizenship and to substantiate its claim that it had New York citizens in its structure. However, the Fund refused to provide that information to Defendants. (*Id.* at 7). Further, Defendants point out that the Fund has not filed a disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 that would disclose its ownership structure. (*Id.* at 8).

In their reply brief, the Fund alleges that information regarding its investors is "highly sensitive proprietary information." (Reply, Dkt. 19, at 3). It contends that it was not required to submit this information under Rule 7.1 because disclosure is unnecessary in cases like this where "removal is facially deficient" and the information to be disclosed implicates "substantial interests in privacy" (*Id.* at 4 n.1 (citing Fed. R. Civ. P. 7.1, Adv. Comm. Notes)). Despite not revealing the

names of its investors, the Fund nonetheless faults Defendants for filing their notice of removal without investigating the Fund's citizenship before simply alleging diversity upon information and belief. (*See id.* at 7–10).

As stated above, the Court credited Defendants' arguments in determining that SRZ is not stateless for diversity purposes and the Fund is not a New York citizen through its associations with Corbin and Gatewood. Thus, these arguments cannot be the basis of a fee award.

However, the Court is troubled by Defendants' reliance upon information and belief in alleging the Fund's citizenship and invoking this Court's jurisdiction. It is true that courts have at times allowed parties to plead diversity jurisdiction based upon information and belief. *See Henderson Apartments Tenant, LP* 2023 WL 5983889, at *3 (collecting cases). However, typically courts have only allowed jurisdictional allegations based upon information and belief in instances where the removing party investigated the other party's citizenship before resorting to an allegation based on information and belief. *See id.* at *2 (describing how Travelers explained in its notice of removal that it conducted a "diligent search of publicly available sources" before alleging diversity jurisdiction based upon information and belief); *BSG Clearing Sols. N. Am., LLC*, 2018 WL 6219812, at *4 (describing how Plaintiffs made a "good-faith attempt" to ascertain the citizenship of the LLC members" by specifying the citizenship of some members before relying upon information and belief); *PMG Int'l Div., LLC v. Random House, LLC*, 2015 WL 225063, at *2 (W.D. Tex. Jan. 14, 2015) (finding that "defendants had a reasonable belief that diversity existed after a thorough investigation"). Here, Defendants did not allege that they conducted any investigation as to the Fund's citizenship before removing this case. This is concerning because as the removing party, Defendants had the burden of establishing citizenship as to each party. Defendants should have done a more thorough investigation of the Fund's citizenship before removing this case.

That being said, the Fund is also not blameless. Defendants attempted to resolve the citizenship inquiry prior to removal by asking the Fund for more details about its investors. Defendants even offered to enter into a confidentiality agreement with regard to this information and support a motion to seal the information. (Resp., Dkt. 16, at 19–20). Instead, the Fund ignored Defendants' requests and concealed information about its investors. It argues that it had a right to do so under Rule 7.1 due to privacy concerns. Even if the Fund is correct in this regard, it cannot also claim that it is entitled to fees because Defendants failed to investigate its citizenship. Given the secret and "proprietary" nature of information regarding the Fund's investors, it is unclear what a thorough investigation of the Fund's citizenship would have revealed.

Accordingly, the Court cannot conclude that Defendants lacked an objectively reasonable basis for believing that diversity jurisdiction existed in this case. The Court finds that the Fund has not carried its burden in proving entitlement to fees, and so in its discretion, it denies the Fund's request to award it attorney's fees as part of the Court's order to remand.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the Fund's motion to remand, (Dkt. 11), is **GRANTED IN PART**. This case is **REMANDED** back to the 455th Judicial District Court of Travis County, Texas. The Fund's request for costs and expenses under 28 U.S.C. § 1447(c) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to compel arbitration, (Dkt. 22), and both parties' motions for hearings, (Dkt. 30, 32) are **MOOT**.

The Clerk of the Court is directed to **CLOSE** this action.

**SIGNED** on June 25, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

13